## HAUSE *v.* ROSE.

(*Supreme Court of Colorado, December Term, 1881—Appeal from the County Court of Lake County.*)

1. ESTRAY LAWS—COMPENSATION TO TAKE UP. While it seems probable the Legislature, in the enactment of the statute relating to estrays, had reference to and intended to embrace, "stock upon the range," and not work animals requiring to be fed, yet, as the language of the statute clearly embraces all estray animals, the Courts can only enforce it as it is. Hence the owner of an estray "animal" is entitled to possession thereof upon complying with the statute, (Sec. 2566, Gen. Laws,) and upon paying or tendering to the taker-up "all the costs in the case, including the costs of taking up and ranching the said stock at the rate of fifty cents per head per month." And the justice before whom proof is made has no right to require the payment of any greater sum.

2. SAME—CERTIORARI—REPLEVIN WILL NOT LIE. In such case, where the owner is ruled by the justice to pay more than the statutory sum for keeping the estray, the ruling might have been reviewed upon *certiorari,* but failing to avail himself of his remedy at the proper time, he cannot maintain an action of replevin against the taker-up for possession of the animal, without tendering the amount so adjudged.

3. RES ADJUDICATA. The judicial determination of a question of law or fact in a justice's court, as well as in a Court of record proper, such Court having jurisdiction of the subject matter and the parties, is conclusive and binding upon the parties, and the record of such proceeding is conclusive evidence of the matters determined, upon the same matter coming in question in the same or another Court, between the same parties, except where the judgment has been fraudulently obtained, and without the negligence of the party adjudged against.

STONE, J. Section 2565 of the General Laws declares what persons may lawfully take up an estray animal, and prescribes the manner of giving notice, and the fees and costs of such notice.

So much of the next section—Sec. 2566—as is pertinent to this case, is as follows:

" Before the owner of any estray so taken up and posted shall be entitled to the possession of the same, he shall notify the taker-up of the time and place before the most convenient magistrate, county judge or justice of the peace, as the case may be, when and where he will prove his right to said property, and shall procure an ·order in writing from said magistrate to the taker-up to deliver the same over into the possession of the owner, upon payment to said taker-up of all the costs in the case, including the costs of taking up and ranching the said

stock at the rate of fifty cents per head per month."    *    *
The only matter in controversy in this case is the lawful
amount which the taker-up of an estray is entitled to receive,
under the statute above recited, for the care and keeping of such
estray.

It is possible that the framers of this statute failed to provide
adequate compensation for the keeping of certain kinds and
classes of animals, having regard to the actual cost of such
keeping, varying as it must with the differences of locality, sea-
son of the year, price of subsistence, etc.

The stray laws of other States, so far as I have examined
them, provide for the payment of the actual, or reasonable ex-
penses, to be determined by a magistrate, upon evidence, if nec-
essary, when the parties cannot agree.

We think there are reasons for supposing that the framers of
the law in question had chiefly in mind, as the subject of this
legislation, that class of animals usually denominated stock cat-
tle, such as run at large or are herded for pasturage in the man-
ner called in this country "ranching."

This law relating to estrays is contained in the act entitled
"An act regulating the branding, herding and care of stock,"
which was first adopted in 1872.

The first section (G. L., 2565,) employs this language:
"After filing said notice it shall be lawful for said taker-up to
herd and take charge of said stock until the same shall be
claimed and proved," etc.; and, as we have seen, the next sec-
tion speaks of the compensation due the taker-up as "the costs
of taking up and ranching the said stock."

But the law, to begin with, makes no distinction as to the kind
or class of animals which are the subject of the law, but uses
the general term, "estray animal."   "No person shall take up an
estray animal, except," etc., is the language of the first line of
the act, and the subsequent references are, "such animal," "said
stock," "any estray," and so on.   And this is all the law we
have relating to estrays.   If imperfectly and unfairly providing for
all classes of animals that may be dealt with as estrays, it never-
theless seems to embrace all.   We cannot, as a Court, supply
omissions, nor make law to fit an exceptional case.   However truth-
fully it may be said that the statute fails to fully provide in certain
cases, this is a matter for legislative correction, and not for judi-
cial legislation.

34

The statute, being explicit, does not admit of intepretation beyond the meaning of its express letter, and must be administered as we find it.

But there is another question we are called upon to determine, affecting the right of the plaintiff as appellant here.

It appears from the record that the parties met before Justice of the Peace De Mattos, where, as the law provides, the defendant proved that he had regularly posted the animal, which was a three-year-old mare, and the plaintiff proved ownership, and also tendered the defendant the legal expenses of posting, and also the costs of keeping the animal, at the statutory rate of fifty cents per month. The defendant refused to accept the statutory amount in satisfaction, and the justice held the tender insufficient, deciding that the plaintiff should pay for such keeping at the rate of one dollar per day, and made an order that defendant deliver the mare to plaintiff upon payment at that rate. Plaintiff then renewed his tender of the statutory amount, and demanded the mare thereupon, and, upon its refusal, brought a suit in replevin for possession of the mare, before another justice of the peace. This second justice dismissed the case, and plaintiff appealed to the County Court, where the case was tried by a jury, which, under instructions of the Court, returned a verdict for defendant. From the judgment of the County Court, plaintiff appeals to this Court, and assigns for error the giving and refusing of instructions by the County Court, and the judgment therein. The County Court in effect instructed the jury that for the purposes of the suit in replevin, the amount ordered by Justice De Mattos to be paid by plaintiff to defendant was conclusive of the amount due.

Upon this phase of the case, we are compelled to say that the judgment appealed from was not erroneous.

If no right of appeal lay from the order of Justice De Mattos, the plaintiff might have had the proceedings reviewed upon *certiorari* for the correction of the erroneous ruling upon the statute in question. The suit in replevin before the second justice was properly dismissed, for without showing a tender of the amount ordered paid by Justice De Mattos, replevin would not lie after that order was made, since the order was conclusive until reversed or set aside by a superior tribunal. The judicial determination of a question of law or fact in a justice's court, as

well as in a Court of record proper, such Court having jurisdiction of the subject matter and parties, is conclusive and binding upon the parties, and the record of such proceeding is conclusive evidence of the matter determined, upon the same matter coming in question in the same or another Court between the same parties, except when the judgment has been fraudulently obtained, and without the negligence of the party adjudged against. *Mitchell* v. *Hawly*, 3 Denio, 414; *Pease* v. *Howard*, 14 Johns., 479; *Doty* v. *Brown*, 4 N. Y., 71; *Kreuchi* v. *Dehler*, 50 Ill., 177; Moore's Justice, Secs. 698-9.

The case of *Kreuchi* v. *Dehler, supra*, is analagous to the one before us, and it is held that where a trial of the right of property was had before a justice of the peace, which resulted in a judgment against the claimant, such trial and judgment would bar an action of trover subsequently brought by the claimant against the officer for the same property.

Failing to avail himself of his proper remedy at the time it was open to him, the plaintiff cannot now complain of the needless burden of litigation he has taken upon himself, although right in the first instance.

The judgment of the County Court is affirmed.

*Shackelford & Winter* and *L. P. Marsh*, attorneys for appellant.

*J. W. Mullahey*, attorney for appellee.