[No. 2071.]

HEAD CAMP, PACIFIC JURISDICTION, WOODMEN OF THE WORLD v. LOEHER.

1. **Evidence—Confidential Communications—Physicians—Statutory Construction.**

Mill's Ann. Stat., section 4824, providing that "a physician or surgeon duly authorized to practice his profession under the laws of this state, shall not, without the consent of his patient, be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient," does not include physicians practicing outside of this state, and not authorized or licensed to practice under the laws of this state, and such unauthorized physicians are not incompetent to testify to such information.

2. **Evidence—Hearsay—Life Insurance—Application.**

In an action against a mutual benefit insurance society upon an insurance certificate, testimony of a physician that prior to the time deceased made application for membership in defendant society he attended deceased as a physician and that he was then suffering from a certain disease, offered to contradict statements in the application, is not objectionable as hearsay testimony.

3. **Same.**

In an action against a mutual benefit insurance society upon a certificate of insurance where a physician residing in another state testified that prior to the date of the application of deceased for membership in defendant society he attended him as a physician, and that he was suffering from a certain disease, testimony of another witness that a short time before his death deceased told witness he had resided at the place where the physician testified he attended him, was admissible.

*Appeal from the District Court of Arapahoe County.*

Mr. H. N. HAYNES and Mr. CHARLES F. TEW, for appellant.

Mr. D. V. BURNS, for appellee.

WILSON, P. J.

By this suit plaintiff sought to recover upon a benefit certificate issued by the defendant society to her son, Waldemar Loeher, and payable to her in case of his death. The representations in the application for membership and in the medical examination were made express warranties, upon the faith and condition of which the certificate was issued, one of the conditions being that "If any of the statements or declarations in the application for membership, on the faith of which this certificate was issued, shall be found in any respect untrue, then in every such case, this certificate shall be null and void and of no effect."

By its answer the defendant society denied liability, because it alleged that a number of the material statements in the application and in the medical examination were untrue. In support of this defense, the defendant offered in evidence a deposition of Dr. T. A. Skillman, a physician resident at New Brunswick, New Jersey, with whom it was claimed the applicant had consulted, and by whom he had been treated about two years before the application for benefit membership in the defendant society, the application being made in Colorado, where the applicant then resided. Upon the objection of plaintiff that the testimony offered was incompetent and hearsay, all of the material portions of the deposition were excluded, and this raises about the only question in the case which needs to be determined.

The chief objection relied upon is that the witness is incompetent to testify by reason of a Colorado statute.—Gen Stats., sec. 3649; Mills' Ann. Stats., sec. 4824. The section is preceded by a preamble, which reads as follows:

"There are particular relations in which it is the policy of the law to encourage confidence, and to pre-

serve it inviolate, therefore, a person shall not be examined as a witness in the following cases." Then follows the first clause, which has reference to a husband and wife testifying for and against each other, and as to the inviolability of communications by one to the other during marriage. The second clause prohibits an attorney from testifying without the consent of his client, to any communication made by the latter to him or as to any advice given by him in the course of his professional employment. The third clause exempts clergymen and priests. The fourth clause reads as follows: "A physician or surgeon duly authorized to practice his profession under the laws of this state, shall not without the consent of his patient be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient." The only controversy here is concerning the words, "duly authorized to practice his profession under the laws of this state," it being conceded that the witness was not so authorized under the laws of this state with reference to the practice of medicine existing at the time when the benefit certificate was issued, and ever since. It is urged by the plaintiff that the words should not be construed in the sense of limiting or restricting the class to which the statutory privilege applied, but rather in accord with what counsel contend was the policy and intent of the enactment as expressed in the preamble. They insist, in other words, that they should be entirely eliminated from the statute, thereby making it apply to all physicians, authorized or unauthorized to practice, licensed or unlicensed.

We do not see how under any authority or rule of construction, a court would be permitted to pursue this course in the case at bar. It is true that in construing statutes, it is a fundamental rule that courts

should endeavor to ascertain and give effect to the legislative intent, and in so doing in some cases it is permissible to read a word or words out of or into a statute. It is equally true, however, that this is not permissible where the words used are free from any ambiguity and doubt, and involve no absurdity or contradiction. In such case, the statute itself furnishes the best and controlling means of its own exposition. To hold otherwise would be for the courts to usurp legislative functions, to entirely supersede the legislative intent, and to substitute for it their own ideas of what the law should be. It is also equally a fundamental rule of construction that courts may not treat words in a statute as surplusage and reject them unless it be impossible to attribute a rational meaning or purpose to them.—*Garfield County v. Schwarz*, 13 Colo. 295.

The statute was enacted in 1883. This was the legislative session immediately succeeding the one (1881) in which the legislature first adopted the law providing regulations for the practice of medicine in this state, and prohibiting it without a party having been first authorized under its provisions. It may well be that the legislature placed these words in the later statute, with the deliberate purpose of carrying out and aiding the policy which it had adopted in the prior one. Again, as a further evidence that these words were inserted for some specific purpose, we need only refer to a preceding clause of the same section, that with reference to attorneys. There these restrictive words were not used,—the statute embracing and applying to all attorneys, whether authorized and licensed to practice law under the laws of this state or not. It seems to us that this alone would furnish strong evidence to the effect that when the legislature in the subsequent clause relating to physicians inserted

these words, it was done for a purpose, and that the words were intended to have the effect and meaning which they do have if construed at all. If the legislative intent had been as contended by counsel for plaintiff, the words would have been omitted absolutely, and it would be from bare, unsupported conjecture alone we could say that the attention of the law-making body was not called to the words or that they were inadvertently inserted, because they and all language of similar restrictive import had been expressly omitted from all of the preceding clauses. However persuasive the arguments of counsel that the law should be such as to apply even to non-resident physicians, and to those, contrary to the express terms of the statute, not authorized to practice under the laws of this state, we can only say that this court is powerless to give relief, it being impossible in our opinion to raise a doubt as to the meaning of the words and language used. It somewhat detracts, however, from the force of this reasoning of counsel, that in this state such communications were not privileged at common law, nor by statute until 1883. Before that recent period, the legislature had not awakened to the great importance of that public policy which it is claimed this statute was intended to promote. Without these words, there would be no restriction in terms upon its application to residents of the state. It would not then be required that the person, even though a resident, for whom the privilege was invoked or who was sought to be declared incompetent as a witness must be shown to have been authorized to practice as a physician or surgeon under the laws of the state. The statute so framed or construed would furnish no rule or guide by which to determine who is a physician or surgeon within its terms. To cure this defect it might again become necessary to read into it additional words in order to

prevent its being sometimes used as an instrument for the obstruction rather than the promotion of right and justice. The provisions of the statute as it now reads are clear, intelligible and easily understood, cannot be said to be in any sense unreasonable or absurd, are subversive of no legal private rights, and are not inconsistent with themselves or with any other law. Under such circumstances, however fully we might agree with counsel that they should be extended and broadened, the courts are without power in that regard. The remedy is with the legislature alone.—*Hause v. Rose,* 6 Colo. 26.

That no state has a similar law—one containing the restrictive words under consideration—is not an argument that they were improvidently used, and that the courts of this state should disregard them. Rather, if the fact has any bearing upon the question at all, it would tend to support the contention that they were inserted advisedly, and for a specific purpose. Dr. Skillman was not rendered incompetent to testify as a witness because of this statute.

The objection that his testimony was hearsay is equally untenable. This, we presume, is based upon the contention that this action being between the beneficiary and the society, the former could not be bound by the statements or declarations of the applicant prior to and not contained in his application. *Knights of Honor v. Wollschlager,* 22 Colo. 213, upon which plaintiff relies, applies only to the declarations of the assured offered to contradict statements in the application. That question is not presented by the testimony of Dr. Skillman. It was sought to prove by him not declarations of the deceased, but the positive fact that prior to the time of his application, he attended the deceased as a physician, and that he was then suffering from a certain disease. We think that

the court erred in excluding the testimony of Dr. Skillman.

The defendant also offered as a witness Mr. Niederlitz, a member and officer of the defendant camp, who testified over the objection of plaintiff that the deceased told him in a conversation had with him a short time previous to his death, that before coming to Denver, he had resided in New Brunswick, New Jersey.  Plaintiff has not assigned cross-error, but as the cause must be reversed and remanded for a new trial, the question as to the competency of this testimony will undoubtedly again arise, and for that reason, we think proper to pass upon it.  In our opinion, the testimony was clearly admissible.  It was not sought thereby to contradict any statement in the application by a subsequent declaration of the assured, hence it does not come within the principle laid down in the Wollschlager case.  That it might possibly prove to be a link in a chain of evidence whereby the untruthfulness of these statements might be shown, is too remote an objection to justify its exclusion.

The judgment will be reversed, and the cause remanded for a new trial in accordance with the views here expressed.                              *Reversed.*