[No. 4818.]

# The Colorado Springs and Interurban Railway Company v. Fogelsong.

1. **Witnesses—Competency—Privileged Communications—Physicians.**

Mills' Ann. Stats, § 4824, provides that a physician and surgeon duly authorized to practice his profession under the laws of this state shall not, without the consent of his patient, be examined as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient. Held, that such provision does not apply to a physician practicing in another state and not authorized to practice under the laws of this state.—P. 349.

2. **Practice in Civil Actions—New Trial—Newly Discovered Evidence—Discretion of Court.**

In passing upon a motion for a new trial on the grounds of newly discovered evidence, the trial court is vested with a large discretion in granting it, but it cannot be arbitrarily exercised; and, in reviewing such action, each case must be determined on its own facts, as there is no absolute criterion governing all such cases.—P. 350.

3. **Practice in Civil Actions—New Trial—Newly Discovered Evidence.**

As a general rule, in order to warrant granting a new trial on the ground of newly discovered evidence, the requirements are that it be such as will probably change the result if a new trial is granted; that it has been discovered since the trial; that it could not have been discovered before the trial by the exercise of due diligence; that it is material to an issue in the case; that it is not merely cumulative to the former evidence; and that it does not merely tend to impeach or contradict the former evidence, except it may be in cases where it clearly appears that it would probably change the result in case of a new trial.—P. 350.

4. **Same—Sufficiency.**

In an action for personal injuries causing alleged incapacity to labor, where the evidence was very conflicting as to plaintiff's physical condition before and after the accident, it is error to deny a new trial on the ground of newly discovered evidence giving plaintiff's ability to walk and do manual labor shortly after the verdict was rendered.—P. 351.

*Appeal from the District Court of El Paso County.*
*Hon. Robert E. Lewis, Judge.*

Action by Charles M. Fogelsong against The Colorado Springs and Interurban Railway Company. From a judgment for plaintiff, defendant appeals.      *Reversed and remanded.*

Decision *en banc*, Chief Justice Steele dissenting.

Mr. David P. Strickler, Messrs McAllister & Gandy, and Messrs. Dines, Whitted & Dines, for appellant.

Messrs. McKesson & Little, for appellee.

Mr. Justice Gabbert delivered the opinion of the court:

A car operated by appellant collided with the rear end of a wagon driven by appellee. He was thrown backwards from his seat, his body striking on coal and the handle of a fork in the wagon bed. He brought suit to recover damages for the injuries sustained. The usual questions in actions of this character, viz., the negligence of defendant, and the contributory negligence of plaintiff, were in issue. The trial resulted in a verdict for seven thousand, five hundred dollars in favor of plaintiff, upon which judgment was rendered. The defendant appeals.

The errors assigned relate to instructions given and refused, the misconduct of counsel in argument to the jury, and the refusal of the court to grant a new trial, based upon the ground of newly discovered evidence. We shall only consider the latter assignment.

Plaintiff sustained no visible injuries of any moment, nor any fractures or dislocations, but claimed that his fall upon the coal and fork handle caused neurasthenia, or a general depression of the

nervous system. There was testimony to prove that he had suffered a great deal of pain; that he was incapacitated for labor from the time of his injury down to the date of the trial; that his bodily functions were greatly impaired; that he was unable to get around except with the aid of crutches or canes, and that he had incurred a considerable indebtedness on account of medical services rendered him.

On behalf of defendant, there was testimony tending to prove that the plaintiff had been ailing more or less for a year prior to his injury; that during this period, he had complained of rheumatism and of pains in his back; that he had had a chill and typhoid fever; that he had moved to Colorado on account of some chronic trouble; and that subsequent to his injury he had suffered from typhoid fever. As is not unusual in this class of cases, there was a marked difference of opinion between the physicians testifying, those on behalf of the plaintiff attributing his condition to the injuries sustained by the collision, while those testifying on behalf of the defendant were of the opinion that it was the result of his condition, and ailments, prior to his injury. There was also a difference of opinion between the physicians as to the length of time his disability would continue; those for plaintiff stating that it would continue indefinitely, while those for the defendant stated that, in their judgment, he would fully recover. During the progress of the trial, it developed that, prior to coming to Colorado, he had lived in Missouri. He testified in effect that he had lived there all his life up to the time he moved to this state, and while there, had always enjoyed good health; had never been ill; that a physician had never attended him; and that he had never been confined to his bed on account of any illness.

After the rendition of the verdict, the defendant filed a motion for a new trial, based upon the ground of newly discovered evidence. In support of this motion, affidavits of four physicians residing in Missouri in the vicinity where plaintiff lived prior to removing to Colorado, were filed. These affidavits are to the effect that each affiant is a practicing physician in the state of Missouri, and is personally acquainted with the plaintiff. Dr. Wallis states that while plaintiff resided in Missouri, he had treated him at various times for neurasthenia in an acute form; that he had had an acute attack of typhoid fever which had left him in a very nervous condition, unable to perform manual labor in any way; and that he had also treated him for acute and chronic stomach trouble. The period covered by the affidavit begins with 1884. Dr. Isaac N. Miller states that he has known plaintiff for twenty-five years; that during that period he had treated him at various times for chronic stomach trouble and resulting weakness of the nervous system; that, during the latter part of his residence in Missouri, he was in a weak and enfeebled condition, and unable to perform manual labor for that reason; and that, prior to removing from Missouri, he told affiant that he was going to Colorado for his health. Dr. Britts states that he had also treated plaintiff for neurasthenia during the year 1895. Dr. James M. Miller states that he has known plaintiff since his birth, and that, during the years 1895 to 1899, inclusive, he treated the plaintiff for neurasthenia, and also during that period for suppuration of the lymphatic glands of the neck, and that, during that time, plaintiff was a pronounced neurasthenic. The affiant further states that he had repeatedly advised the plaintiff to change his place of abode on account of

his health, and did advise him to remove to Colorado for that purpose.

Subsequent to filing these affidavits, Dr. Wallis wrote plaintiff a letter in which he states he had ascertained that he may have been mistaken with respect to treating him for typhoid fever, and that he may have treated him for pneumonia.

Plaintiff did not controvert these affidavits, but filed sixteen of persons who had known him personally during the whole or part of the period covered by the affidavits of the physicians, and who were residents of the vicinity where he lived in Missouri, some of whom had known him from boyhood, to the effect that, during the respective periods they had been acquainted with him, he was an able-bodied man; had performed hard manual labor; had never had a spell of sickness, and in his boyhood was strong and rugged. The affidavit of his wife was also filed, in which it was stated, in effect, that she was married to plaintiff in 1896, and had resided with him ever since; that he did not leave Missouri for his health, but while there was a strong, able-bodied man, able to perform, and did perform, hard labor; that she never knew of her husband having neurasthenia, and never knew of any doctor treating him for that trouble. In addition to these affidavits, plaintiff also filed several of persons who were acquainted with him during the period he resided in this state, and prior to his injury, which were to the effect that he had, to their knowledge, performed hard labor since coming to Colorado, and had the appearance of being a strong, healthy, able-bodied man. At the trial of the cause, there was testimony introduced on the part of plaintiff that he had been at work for a considerable period prior to his injury, and made no complaint of not being well.

On behalf of defendant, an affidavit was filed,

in which it was stated, in substance, that since the rendition of the verdict, it was learned through the trial of another case in which one of the physicians who was a witness for plaintiff at the trial of his case testified that he held a contract with plaintiff in which it was stipulated that he should have a percentage of the amount recovered in his action against the defendant, and that the other physician associated with him in the treatment of plaintiff, and who had also been a witness on behalf of plaintiff, was interested in that contract. The doctor who, it was said, had this contract, made an affidavit which was filed by plaintiff in opposition to the motion for a new trial, in which he stated that the contract he had with plaintiff was not for a percentage of a recovery from defendant, but for an amount definite and certain, for the services which he had rendered in treating the plaintiff for his injuries, and disorders resulting therefrom. The other physician also filed an affidavit in which he stated that, at the time he testified, he was not aware of the existence of the agreement mentioned, but had since learned that his associate did have a contract with the plaintiff, wherein it was agreed that he and his associate should be paid a sum, definite and certain, for their services rendered him as physicians.

Defendant, in support of his motion for a new trial, also filed the affidavits of George McKray and his wife. The affidavit of the former is to the effect that, since the verdict was rendered for plaintiff, he and his wife have lived in the house immediately adjoining the one occupied by plaintiff, and that he is well acquainted with him; that he conducts a shoe-shop near the premises occupied by plaintiff; that, in the month of August, 1903, affiant observed plaintiff working in his garden without crutches or other support, and during the same month had observed

plaintiff walking from his house to the barn upon his premises (a distance of ninety feet) without the aid or assistance of crutches or cane, or support of any character, and since that time had frequently observed him walking back and forth between his house and barn without the use or assistance of crutches, cane, or other support; that, upon each of these occasions, he appeared to be able to walk the same as any other person, and that there was nothing about his appearance to indicate that he was having difficulty in walking, but, on the contrary, appeared to be walking as any well person would; that, in the latter part of August or the first of September, 1903, he observed plaintiff operating a washing-machine in the barn upon the premises occupied by him, which necessitated his alternately assuming a stooping and upright position, and that he appeared to be performing such work without the assistance of any support, and doing the work in the same manner that any person ordinarily would; that about the tenth of October, 1903, plaintiff came into affiant's shoe-shop, having with him the crutches which he had used at the time of the trial. In the course of the conversation which then occurred, affiant asked plaintiff, in substance, why he did not throw away his crutches and go to work hauling coal again, to which plaintiff replied: "I could do it all right, but it would not look very well for me to do it while my case is still in court."

The affidavit of Mrs. McKray is substantially as follows: That in the latter part of August or the first of September, 1903, she observed plaintiff operating a washing machine in his barn; that, in doing this, he was required to stoop and rise alternately, and that, so far as she could see, he was performing this work without any support, and the same as any other person would; that in the fore part of

October, 1903, she observed plaintiff walking from his house to his barn without the aid or assistance of crutches or any other support, and apparently without difficulty, and as any other person would walk; that shortly thereafter, in a conversation with the plaintiff in the shoe-shop of her husband, plaintiff stated, in substance, to her, that it would not do for him to go without crutches at that time, under the circumstances. These affidavits cover a period subsequent to the rendition of the verdict in favor of plaintiff, and prior to the date when the motion for a new trial on behalf of defendant was ruled upon by the trial court.

In opposition to these affidavits, plaintiff filed affidavits which, in effect, charged that the McKrays had attempted to extort money from the defendant as the price of their testimony. Counter-affidavits on behalf of defendant were filed, from which it appears that the McKrays were not willing witnesses; that they did not appear voluntarily; that they thought they ought not to incur the ill-will of plaintiff and his wife, which would be the result if they testified, and that they did, in fact, demand more money than the ordinary witness fees would amount to; that their demand was not acceded to, but they were subpœnaed to appear in court and testify; and, finally, without hope of reward, they made the affidavits in question.

In response to the affidavits of the McKrays, affidavits of plaintiff and his wife were filed, which, in effect, denied all the statements in the affidavits made by the McKrays with respect to plaintiff's seeming physical condition subsequent to the rendition of the verdict, and the statements attributed to him. There were also two affidavits filed on behalf of the plaintiff, to the effect that affiants resided near the residence of plaintiff; that they had seen

him almost daily during the period mentioned in the McKray's affidavits, and that they had never observed him walking or moving about without the aid of crutches or some other support.

On behalf of plaintiff, it is contended that the affidavits of the Missouri physicians cannot be considered in support of the motion of defendant for a new trial, upon two grounds: (1) That defendant has not shown the proper degree of diligence in ascertaining the names of these persons, and the facts to which they would testify before the trial; and (2) that, by virtue of the provisions of subdivision 4, section 4824, Mills' Ann. Stats., their testimony would not be competent. This statute is as follows:

"A physician or surgeon, duly authorized to practice his profession under the laws of this state, shall not, without the consent of his patient, be examined as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient."

Counsel for plaintiff also contend that the testimony with respect to the alleged interests of plaintiff's physicians in the amount of his recovery by virtue of their contract with him, cannot be considered in support of defendant's motion, because such testimony would merely tend to impeach their credibility. We shall only consider the one proposition, which relates to the competency of the statements made by the Missouri physicians, or the competency of their testimony, as outlined in their respective affidavits in case a new trial was granted. That question was thoroughly considered in *Head Camp, etc., v. Loeher*, 17 Colo. App. 247, wherein it was determined that the statute in question does not apply to physicians practicing outside of Colorado, and not authorized or licensed to practice under the laws

of this state. A discussion of the question would not add anything to what was said by the learned judge writing the opinion in that case; and, without further comment, we also hold, following that authority, that the statute invoked does not render the affidavits or the testimony of the Missouri physicians incompetent.

The important question is presented by the affidavits made by the McKrays. We have frequently decided that, in passing upon a motion for a new trial, where the applicant makes a showing with respect to facts which must be made to appear before motions of this character are entitled to consideration, that the trial court is vested with a large discretion in granting or denying it, and therefore such discretion involves some independence of judgment, but it cannot be arbitrarily exercised. Necessarily, then, each case, where the action of the trial court is drawn in question on motions of the character under consideration, must be determined on its own facts, because there is no absolute criterion governing all such cases. As a general rule, in order to warrant granting a new trial on the ground of newly discovered evidence, the requirements are that it be such as will probably change the result if a new trial is granted; that it has been discovered since the trial; that it could not have been discovered before the trial by the exercise of due diligence; that it is material to an issue in the case; that it is not merely cumulative to the former evidence; and that it does not merely tend to impeach or contradict the former evidence, except it may be in cases where it clearly appears that it would probably change the result in case of a new trial. —*Barton v. Laws,* 4 Colo. App. 212; 14 Enc. Pl. & Pr. 791; *Beals v. Cone,* 27 Colo. 473.

With respect to the evidence in question, as outlined by the McKray affidavits, diligence and discovery since the trial are not involved, because it relates to matters occurring subsequent to the trial, and it is clearly material to an issue in the case. It is not merely cumulative to former evidence for defendant, nor is it simply impeaching or contradicting evidence on behalf of the plaintiff, for the reason that, on the question of plaintiff's injuries, his contention was, that his condition was the result of being thrown backward from his seat, and on behalf of the defendant, that it was the result of bodily ailments from which he suffered prior to his injury, while the evidence in question would tend to prove that his condition, as claimed by him at the trial, was simulated, and hence would introduce an entire new element on the question of the extent of his injuries as the result of the alleged negligence of the defendant. This evidence, if a new trial is granted, would, if believed, certainly change the result, so far as the amount of the verdict is concerned, for his visible injuries were not such as to justify the rendition of a verdict in the sum of $7,500, which could only be sustained upon the assumption that the fall of plaintiff from his seat caused him to be afflicted with neurasthenia. Inasmuch as the McKray affidavits are controverted, and their credibility challenged, the remaining question to consider is whether, in these circumstances, the action of the trial judge, in denying the motion for a new trial, will be disturbed.

In a measure, the trial court must determine in advance the credibility of the new evidence, but in the case at bar, a peculiar condition is presented. The testimony, as outlined in the affidavits of the McKrays, is neither manifestly false nor incredible. True, it is controverted, and the credibility of affi-

ants is challenged; but neither the trial, nor this court, can say, for this reason or in connection with the evidence introduced at the trial, that they are not telling the truth. The proposed testimony of affiants goes to the very vitals of the case, so far as the extent of plaintiff's injuries is involved. Whether what they say they will testify to is true or untrue, can only be satisfactorily determined after they have been examined and cross-examined as witnesses. It relates to matters which the defendant could not possibly have had the benefit of at the trial, and the credibility of affiants, and the weight to be attached to their statements in the circumstances of this case, should be determined by a jury.—14 Enc. Pl. & Pr. 794, 795; *Sullivan v. C., R. I. & P. Ry. Co.,* 119 Iowa 464; *Holmes v. Roper,* 10 N. Y. Supp. 284; *Upington v. Keenan,* 21 N. Y. Supp. 699; *Wells, Fargo & Co. v. Gunn,* 33 Colo. 217.

The judgment of the district court is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

Decision *en banc.* CHIEF JUSTICE STEELE dissents.