[No. 4495.]

## WELLS, FARGO & COMPANY v. GUNN.

1. **Negligence—Contributory Negligence—Instructions.**

In an action for damages for injuries alleged to have been caused by defendant's employee negligently driving defendant's horse, and wagon against plaintiff's horse, causing him to run away and to throw plaintiff from the wagon in which she was riding, where defendant claimed that plaintiff was guilty of contributory negligence in jumping from the wagon and in not using ordinary and usual care to manage her horse at the time he started to run, and where there was evidence tending to prove plaintiff's negligence in failing to manage her horse, it was error to instruct the jury that if plaintiff was placed in peril through defendant's negligence and in attempting to avoid the peril through the impulse of fear was injured, she was not charged with contributory negligence, and to refuse to give an instruction requested that it was plaintiff's duty to exercise ordinary care in the use of the means at hand to control her horse, and if she failed to do so she was guilty of contributory negligence.

2. **Negligence—New Trial—Newly Discovered Evidence—Feigning Injury.**

Where plaintiff recovered a judgment against defendant for personal injuries upon evidence which showed that plaintiff was suffering from permanent paralysis, it was an abuse of discretion and erroneous to refuse to grant defendant's motion for a new trial on the ground of newly discovered evidence supported by the affidavits of physicians to the effect that they made a

physical examination of plaintiff the day before trial, who then assumed to be paralyzed in almost every muscle of the body, that she appeared to be unable to speak a word or to protrude her tongue, and that there was an apparent complete anesthesia of the entire body, and that two days later, and after the cause had been submitted to the jury, they again visited plaintiff and found her sitting on the side of the bed, and that she was able then to protrude her tongue and talk freely, and was able to walk about the room without support of any kind, and that all symptoms of anesthesia had almost entirely disappeared, and in which the physicians expressed the opinion that plaintiff was not suffering from any organic disease of either the spinal cord or brain.

*Appeal from the District Court of Arapahoe County: Hon. Samuel L. Carpenter, Judge.*

Messrs. Rogers, Cuthbert & Ellis, Mr. George P. Steele and Mr. Pierpont Fuller, for appellant.

Mr. E. C. Stimson and Mr. E. G. Vanatta, for appellee.

Mr. Justice Campbell delivered the opinion of the court.

The negligence charged in the complaint is that defendant's employee, who was driving one of its express wagons, carelessly drove his horse into and upon the neck and shoulder of the horse in possession of plaintiff which was attached to a wagon in which she was seated, thereby causing her horse to run away and throw her from the wagon upon a stone pavement with great violence, to her serious and permanent injury, which consisted of a fracture of the eleventh and twelfth dorsal vertebræ, a contusion of the spinal cord, and a neuritis of the spinal nerves, thereby producing a partial paralysis of her entire body and causing her great pain and suffering.

The defendant denied the negligence and pleaded contributory negligence of the plaintiff. The trial resulted in a verdict in plaintiff's favor for five

thousand dollars, upon which the court entered judgment after overruling defendant's motion for a new trial, and defendant is here by its appeal.

The three principal grounds assigned for a reversal of this judgment are: *First,* that the verdict is manifestly against the weight of the evidence, the proof not being sufficient in law to establish the negligence which the complaint charged, and entirely failing to connect the injuries of the plaintiff with the alleged wrongful acts of defendant; *second,* error upon the part of the court in giving instructions and in refusing instructions tendered by the defendant; *third,* abuse of discretion by the trial court in denying defendant's motion for a new trial based upon newly discovered evidence.

1. In view of our conclusion that the judgment cannot stand because of errors in instructions and an abuse of judicial discretion in not granting a new trial, the first assignment of error will not be considered by us further than to remark that the record discloses several closely contested questions of fact, and, to say the least, there is enough doubt about the legal sufficiency of the evidence to sustain the verdict, to have made it the duty of the trial court to set aside the same on the showing made in support of defendant's motion for a new trial.

2. The contributory negligence relied upon by defendant was that plaintiff's injuries, if any, were the result of her negligently jumping from the wagon, and that she did not take the usual precautions which were at hand for managing the horse at the time he started to run. In other words, had she refrained from jumping, or had she used those means for controlling her horse, she would have escaped injury. In instruction No. 13, given of its own motion, the court advised the jury that, if through the negligence of defendant's servant plaintiff was

placed in a position of peril, and attempting through the impulse of fear to avoid it she received the injury complained of, she was not charged with contributory negligence, even though her conduct might have been imprudent under other circumstances, for imprudent conduct growing out of sudden fright is chargeable to the person whose conduct gave rise to the alarm.

No question is raised as to the propriety of this instruction in so far as it bears upon the alleged contributory negligence of plaintiff in jumping from the wagon; but the grievance is that it wholly ignores and leaves out of view another contention of defendant that plaintiff was also guilty of contributory negligence in that she neglected to use the ordinary precautions for controlling the horse, of which, had she availed herself, the injury would not have occurred. There was evidence tending to prove that plaintiff was negligent in this latter particular, and defendant tendered to the court an instruction, which was refused, in which the jury were told, in substance, that it was plaintiff's duty to exercise ordinary care and prudence, and if, when she received the injury, she failed in this respect in not using the means at hand for controlling the horse, she was guilty of contributory negligence. The confining of the instructions given to the one phase of contributory negligence pertaining to the jumping from the wagon, and refusing to instruct as asked with respect to plaintiff's alleged neglect in failing to control the horse, might have, and probably did, mislead the jury into believing that plaintiff was not guilty of any contributory negligence whatever, if she was not to be charged with neglect in the act of jumping. ·

3. The defendant asked for a new trial upon the ground, among others, that material and important evidence in its behalf had been discovered since the trial which was not, and in the nature of things

could not have been, known before the trial. We are clearly of opinion that the court abused its discretion in refusing a new trial upon this ground.

The testimony of plaintiff's physician who had attended her up to the day of the trial was that she was then suffering from neuritis of the nerves of the spine, and from an injury to the eleventh and twelfth vertebræ; that she was unable to walk or stand or to sit upright except when supported; that there was an entire absence of sensation in the greater part of the body; that she was totally disabled and unable to wait upon herself; that she was unable to speak, and, in his judgment, a great portion of the injuries from which she suffered were permanent in nature, and that paralysis of sensation, especially in the lower extremities, would always remain. While he was of opinion that she might recover her speech, he thought she would never be able to walk, and that sensation in her lower limbs would never return. Trial began on December 12, and the cause was submitted to the jury on the following day.

In support of the motion for a new trial the defendant presented affidavits of Drs. Edward Delehanty and Charles A. Powers. In that of the former it is stated that he and Dr. Powers, on the 11th day of December, the day before the trial commenced, made a physical examination of plaintiff, who then assumed to be paralyzed in almost every muscle of her body, and only the slightest movement of her arms or legs was performed; that there was an apparent complete anesthesia of the entire body, except around the anal region, and included the tactile senses. Plaintiff appeared to be unable to protrude her tongue, or to speak a single word, although she could understand what was said to her. On the afternoon of December 13, after the cause was submitted to the jury, he visited the hospital and saw plaintiff;

at that time she was sitting on the side of the bed fully dressed in hospital clothes, was able to protrude her tongue and talk freely; her paralysis had disappeared to such an extent that she was able to walk about the room without support of any kind; that all symptoms of anesthesia had almost entirely disappeared, and normal taste and smell had returned. The physician gave it as his opinion, from the fact that plaintiff had, within the space of thirty-six hours, made such a recovery from what, on the first examination, seemed to be a complete paralysis to an apparently normal condition, that plaintiff was not, and is not, suffering from any organic disease of either the spinal cord or the brain. The affidavit of Dr. Powers is in all substantial respects the same as that of Dr. Delehanty.

Dr. Arndt, on the staff of physicians at the county hospital of Denver, where the patient was before, during, and a short time after, the trial, says that he saw the plaintiff on the 12th of December, and she was then apparently unable to move her limbs, or talk or swallow food, and there seemed to be a complete paralysis with respect to the power of locomotion and speech. He saw her again on the afternoon of December 13 and she had then suddenly recovered her power of speech, was able to walk freely and unassisted about the ward, and on the 14th of December plaintiff arose from her bed, dressed herself unassisted, and walked out of the hospital unsupported and unassisted.

Two trained nurses, who were employed in the county hospital, and one patient also made affidavits to the effect that, after the trial was over, plaintiff, without assistance, dressed herself and walked about the hospital and talked freely, took food in a normal fashion, and seemed to have regained her normal powers of locomotion and speech, whereas, before

that time, while in the hospital, she was apparently in the condition testified to by her own physician.

Counter-affidavits resisting the motion for a new trial were filed in behalf of plaintiff, including her own and that of her physician, and of another physician in Cripple Creek, in which, to some extent, the affidavits in support of the motion are controverted. But from plaintiff's own affidavit and that of her physician, it appears that the recovery which she made so soon after the verdict was returned, was very remarkable, and that, on the 14th of December, assisted by her physician, she walked from the county hospital in Denver to a carriage waiting for her, and was therein conveyed to the city railroad station and taken in a sleeping car from Denver to Cripple Creek, where, according to her affidavits, she relapsed into the condition she was in at the time of the trial.

In support of the court's ruling denying this motion, plaintiff says, *first,* that it appears from the affidavits that Dr. Powers and Dr. Delehanty had made an examination of plaintiff prior to the trial, and that the evidence which defendant now seeks to produce in case of a new trial was in its possession and not produced at the former trial, and hence no legal grounds have been shown why a new trial should be had.

While it is true that the physicians made an examination of the plaintiff before the trial, and while it may also be true that it was their belief that plaintiff was in a measure feigning or shamming, still the newly discovered evidence of which defendant seeks to avail itself, in the very nature of things, did not exist, and could not have been discovered or produced, until after the trial was over; for that evidence relates to things which transpired after the verdict was returned. Without intimating our own opinion as to whether or not plaintiff was shamming,

it is sufficient to say that this newly-discovered evidence is material and important on that issue, and the defendant is entitled to produce it before a jury. Dr. Pennock's testimony at the trial as to the character of plaintiff's injuries was based, in part, upon what she told him, partly on the result of his own examination. His testimony, as an expert, that plaintiff's injuries were as described and were permanent, rested upon the same foundation. If defendant's affidavits are true—indeed, if the plaintiff herself and her physician are to be believed—then it is entirely clear that she had exaggerated her condition, and he was mistaken in his judgment. Certain it is that the injuries which she claimed to have suffered, which he thought to be permanent, were not so. All the affidavits negative both propositions.

That the amount of the verdict was largely the result of the expert testimony, is too clear for argument. This, in connection with the fact that the questions of fact were closely contested and the improbability of some of plaintiff's evidence touching the accident, convinces us that there was an abuse of discretion in not awarding a new trial. For the reasons above given, the judgment is reversed, and the cause remanded for a new trial.

*Reversed.*