[No. 13063.  *En Banc.*  December 5, 1916.]

## H. T. GILSON, *Respondent*, v. WASHINGTON WATER POWER COMPANY, *Appellant*.[1]

CARRIERS—TAKING ON PASSENGERS—NEGLIGENCE—CLOSING DOOR—INSTRUCTIONS—HARMLESS ERROR. Where, in an action for injuries sustained in attempting to enter a pay-as-you-enter car, there was a conflict in the evidence as to whether the car was standing still with the door open as an invitation to enter, or whether the car had started with the door closed, error in instructing that the defendant owed the duty to use the highest degree of care, is not prejudicial, taken in connection with other instructions immediately following telling the jury that closing the door upon the plaintiff after he had started to enter was negligence, but that plaintiff could not recover if he tried to enter after the door was closed; since the jury would not receive the impression that the high degree of care first stated was required unless they found that the car door was open under such circumstances as to be an invitation to enter.

APPEAL—REVIEW—INSTRUCTIONS—REQUESTS. It is not error to refuse to give requested instructions that are covered in the general charge.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE. In an action for personal injuries in which it was shown that plaintiff required crutches for walking, a new trial for newly discovered evidence is properly refused upon a showing by affidavits and photographs that, seventeen days after the trial, the plaintiff was walking with a cane, and some of the medical witnesses were of the opinion that he had been "faking his injuries"; it appearing from the affidavit of plaintiff and his physician that he had been advised to try using a cane and could walk only short distances without crutches; since the newly discovered evidence was largely cumulative and would not likely change the result, and the amount of the verdict plainly indicating that the award was not for total or permanent disability.

Appeal from a judgment of the superior court for Spokane county, Clifford, J., entered May 4, 1915, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by a passenger on a street car. Affirmed.

*Post, Avery & Higgins*, for appellant.

*Plummer & Lavin*, for respondent.

[1]Reported in 161 Pac. 352.

PARKER, J.—This is an action to recover damages for personal injuries which the plaintiff, H. T. Gilson, alleges were received by him as the result of the negligence of one of the defendant's conductors occurring while the plaintiff was attempting to enter one of defendant's street cars as a passenger. Trial in the superior court resulted in verdict and judgment in favor of the plaintiff awarding him $3,500 damages, from which the defendant has appealed to this court.

Appellant owns and operates a street railway system in the city of Spokane. Its street car which respondent was attempting to enter at the time he was injured had a closed rear vestibule, with two doors on the right side thereof, one for passengers entering, and the other for passengers leaving the car. It was a pay-as-you-enter car. It was the duty of the conductor not only to collect fares from passengers as they entered and passed through the vestibule, but also, by means of a lever, to open and close the doors for passengers as they entered and left the car. Respondent claims that, while the car was standing still with the doors open as an invitation for passengers to enter, and while he was following other passengers who were entering the car, he attempted to enter through the proper door as a passenger; and that, when he had proceeded to the extent of placing one or possibly both feet on the step and taking hold of the car or hand hold at the side of the opening occupied by the door when closed, the conductor suddenly closed the door, striking respondent and causing him to fall backward upon the pavement of the street, resulting in the injuries for which he claims damages.

That respondent was seriously injured by his fall, seems amply supported by the evidence, though the evidence is conflicting as to the extent of the injuries in so far as the opinion testimony of physicians given upon the trial is concerned. Respondent's injuries were received on November 17, 1914.

16—93 WASH.

On March 17 to 19, 1915, just four months thereafter, the trial occurred. Respondent suffered severe pain during the early part of this period and had suffered pain more or less up until the time of the trial. His lower extremities were partially paralyzed, resulting, in the opinion of his physician, Dr. Rigg, from a hemorrhage of the spinal cord. His recovery was slow. There was loss of power of locomotion. From an examination of respondent, made a day before the commencement of the trial, Dr. Rigg testified as his opinion that respondent did not then have the use of his lower extremities to the extent of more than two-thirds of their normal use, and that the period that condition would continue to exist was indefinite. Respondent testified that it was then necessary for him to use crutches to walk because, "My legs give out altogether when I go to walk if I have not got crutches to support me." Respondent was, at the time, thirty-six years old, was a railway trainman, and capable of earning from $100 to $125 per month.

It is contended in appellant's behalf that the trial court erred, to appellant's prejudice, in giving to the jury the following instruction:

"Instruction No. 2. . . . The defendant in this case is a common carrier and owed to the plaintiff the duty of using the highest degree of care consistent with the reasonable operation of its cars for his safety not only while riding upon its cars, but in entering or alighting therefrom; and for any injury which he may have sustained by the failure on the part of the defendant company to perform this duty he would have a right of recovery in this action."

This, it is insisted, was erroneous, in that the language of the instruction assumes that the relation of carrier and passenger existed between appellant and respondent at the time he was injured, calling for the highest degree of care on the part of the conductor. It may be conceded that, standing alone, this instruction seems to have that meaning and would, to that extent, invade the province of the jury; since

there is room for difference of opinion upon the question of respondent's being then a passenger, in view of the conflict in the evidence as to whether or not the car was standing still and the door open inviting passengers to enter. However, the court's instructions continue as follows:

"Instruction No. 3. In the case now on trial, if you find from the evidence that the plaintiff attempted to board the car at a time when the door of the car was open and other passengers were entering, and at the time the conductor in charge of the car either saw the plaintiff attempting to enter the car, or could have seen the plaintiff if he, the conductor, had used the degree of care that a reasonably careful and prudent man would have exercised under the same or similar circumstances; and you further find that the conductor closed the door of the car while the plaintiff was so trying to enter the car and thereby caused the plaintiff to fall on the paved street substantially as alleged in his complaint, under such circumstances the defendant would be guilty of negligence; and if you further find that the plaintiff himself was not guilty of any negligence which contributed to his accident, then your verdict should be for the plaintiff.

"Instruction No. 4. If on the other hand you find from the evidence that the conductor in charge of the car had closed the door of the car when the plaintiff attempted to board the car, and that he fell upon the street and sustained his injuries on account of his own negligence in attempting to get upon the car at a time when the door was closed, then the plaintiff was guilty of contributory negligence and your verdict should be for the defendant."

Reading all of these instructions together, we think that the jury would not likely receive the impression that the high degree of care stated in instruction No. 2 was required of the conductor unless they found that the car door was open under such circumstances as to in effect be an invitation to respondent to enter the car as a passenger, and he was attempting to so enter. Of course, if the jury so found, it was not error to have them so measure the degree of care required of the conductor. We conclude that this claimed error was not prejudicial to appellant's rights, in view of

all of these instructions. *Morran v. Chicago, Milwaukee & Puget Sound R. Co.*, 70 Wash. 114, 126 Pac. 73.

Some contention is made in appellant's behalf that the giving of the fourth instruction was erroneous, but we are clearly of the opinion that it was not so. It is also complained that the refusal of the court to give a certain requested instruction was error. An examination of this requested instruction, however, convinces us that it was given in substance by the court, and that, therefore, the refusal to give it in the exact language requested was not prejudicially erroneous.

One of the grounds of appellant's motion for a new trial is newly discovered evidence; and error is claimed in its behalf because the trial court did not grant a new trial upon this ground. Affidavits in support thereof were filed tending to show respondent's condition on April 5th and a few days following, which was seventeen days after the trial. Three photographs were taken of respondent on April 6th and one on April 9th, at the instance of appellant, without his knowledge, while upon the streets of Spokane. These photographs show him apparently walking and also standing, using a cane, and without the use of crutches. Thomas Aston, a claim agent of appellant, stated in his affidavit that he saw the plaintiff on April 5th walking on a street in Spokane using only a cane. He does not describe the nature of respondent's walk, whether it appeared to be natural, laborious or painful. Dr. O'Neill, who had been a witness for appellant upon the trial, stated in his affidavit that, at the time of the giving of his testimony and ever since, he was and has been of the opinion that respondent was "faking his injuries;" that, on April 6th, he saw respondent walking without the use of crutches, but with a cane, and that his gait or walk was materially different from that which he used at the time of the trial while walking with crutches; that "his style of walking was that of limping a little as though he had a sore foot," and that his, O'Neill's, former opinion was confirmed by what he saw of respondent's action

at that time.   Dr. Eikenbary, who was a witness for appellant upon the trial, stated in his affidavit, as he did at the time of giving his testimony, that he was of the opinion that respondent could use his legs as any normal man could if he desired so to do; that he had no injury which interfered with such use; that he was "faking his injuries;" that he, Eikenbary, examined the photographs taken of plaintiff since the trial and that his opinion is confirmed by the photographs. Dr. Weisman, who was a witness for appellant upon the trial, stated in his affidavit that, at the time of giving of his testimony and ever since, he has been of the opinion that respondent was "faking his injuries," and that such opinion was confirmed by an examination of the photographs taken of respondent since the trial.   Clyde Higgins in his affidavit states that he saw respondent April 9th walking without crutches using a cane only, but does not describe the nature of respondent's walk or the apparent effort required by respondent when walking with a cane.   Dr. Rigg, the physician who attended respondent since he was injured and who was a witness for respondent upon the trial, states in his affidavit that, on about April 5th, he advised respondent to try to walk some and use his feet without the aid of his crutches temporarily, for short periods of time when he could do so; and also states the opinion that respondent "is not faking his injuries."   Respondent in his affidavit states that he did walk short distances, on April 5th and thereafter at times, without crutches, using a cane, but that he could so walk only a short distance at a time and required prolonged rests; that he has not abandoned his crutches and that it is still necessary for him to use them practically all of the time. The photographs taken of respondent furnish but little evidence as to the ease or effort with which respondent walked at those times.   The reason of this manifestly is that they are not "moving pictures."

The substance of the showing made by these affidavits and photographs is, as we view it, that seventeen days after the

trial respondent could walk to some extent with a cane and without the use of crutches; that such walking was exhausting to him and that he still required the use of his crutches most of the time and that his condition had possibly somewhat improved; but this showing does not, we think, furnish any substantial ground for the conclusion that respondent was "faking his injuries" at and prior to the time of trial, or that he was not severely injured substantially to the extent claimed by himself and his physician, as testified to by them upon the trial and found by the jury. It seems to us that the facts so shown are not sufficient to call for the granting of a new trial upon the ground of newly discovered evidence. In other words, the alleged newly discovered evidence is almost wholly cumulative touching the extent of respondent's injuries, does not materially aid the defense beyond the showing made in appellant's behalf upon the trial, and would not be likely to change the result. It is worthy of note that manifestly the evidence introduced in respondent's behalf did not tend to show total or permanent disability and the amount of the verdict plainly indicates that the award was not made upon any such theory.

Counsel for appellant call our attention to four decisions of the courts which we think come as near lending support to their contention as any to be found in the books. One of the decisions so relied upon is that of *Wells, Fargo & Co. v. Gunn*, 33 Colo. 217, 79 Pac. 1029. The plaintiff in that case claimed, and the evidence introduced in her behalf tended to show, that her injury consisted of a fracture of the eleventh and twelfth dorsal vertebrae and a contusion of the spinal cord, thereby producing partial paralysis of the entire body; that she was totally disabled; that she might recover her speech but would never be able to walk. The trial resulted in a verdict in her favor of $5,000. Within thirty-six hours after the case had been submitted to the jury, as was shown by affidavits in support of the defendant's motion for new trial, she was sitting on the side of her bed, was able to pro-

trude her tongue and talk freely, and her paralysis had disappeared to such an extent that she was able to walk about the room without support of any kind. These facts, discovered almost immediately upon the close of the trial, showed all but conclusively that her injuries were not as claimed upon the trial and as found by the jury. It was there held that the trial court erred in denying a new trial. Manifestly the showing here made is not comparable with that showing.

Another of the decisions relied upon by counsel for appellant is that of *Southard v. Bangor & A. R. Co.*, 112 Me. 227, 91 Atl. 948, L. R. A. 1915B 243. The plaintiff there claimed, and the testimony introduced in his behalf tended to show, that, as the result of his injuries, he was suffering from an incurable disease and that he was physically wrecked. He was awarded by the jury $8,500. The newly discovered evidence showed acts of the plaintiff very soon following the trial of such a character that he could not have been in the physical condition he claimed he was at the time of the trial. The opinion of the court does not tell us what these acts of the plaintiff were. This decision, so far as can be determined from the facts given therein, seems equally inapplicable here.

Another decision relied upon by counsel for appellant is that of *Colorado Springs & I. R. Co. v. Fogelsong*, 42 Colo. 341, 94 Pac. 356. Evidence introduced on behalf of the plaintiff tended to show that the plaintiff was seriously injured, the effects of which would continue indefinitely. He was awarded by the jury $7,500. Upon the hearing of his motion for new trial, affidavits were produced showing acts and remarks of plaintiff occurring both before and after the trial wholly inconsistent with his being injured as seriously as claimed, such as doing heavy labor at a time when he claimed to be wholly unable to perform such labor. Among other things shown, was that, in a conversation, he was asked why he did not throw away his crutches and go to work, to which he replied, "I could do it all right but it would not look well for me to do so while my case is still in court."

Plainly the decision reversing the trial court and granting appellant a new trial in that case has no controlling force here.

Another decision relied upon by counsel for appellant is that of *Anshutz v. Louisville. R. Co.*, 152 Ky. 741, 154 S. W. 13, 45 L. R. A. (N. S.) 87. In that case the plaintiff, a married woman, was injured, which injury and the necessary operation therefor, the evidence tended strongly to show, rendered her barren so she could never thereafter bear children, and that at the time of the trial she was affected with the growth of a tumor in her abdomen, which was also apparently the result of her injury, and would soon necessitate another serious operation. She was awarded by the jury $7,000. Subsequent to the rendering of this verdict, and within the time defendant could under the laws of Kentucky petition for a new trial, several months after the trial, the plaintiff gave birth to a child, proving conclusively that the supposed tumor was in fact a foetus. This being shown as newly discovered evidence, the defendant was awarded a new trial. It is worthy of note that this decision affirmed the trial court. Plainly this decision could have no controlling force in the disposition of this case.

No decision of any court has come to our notice which has disturbed the denial of a new trial by a trial court upon a showing no stronger than is here made. Our decisions in *State v. Underwood*, 35 Wash. 558, 77 Pac. 863; *Knapp v. Chehalis*, 65 Wash. 350, 118 Pac. 211; and *Hazlett v. Seattle Elec. Co.*, 71 Wash. 377, 128 Pac. 677, lend support to the view that the trial court did not err in refusing to grant a new trial.

We are of the opinion that the judgment should be affirmed. It is so ordered.

MOUNT, MAIN, ELLIS, CHADWICK, FULLERTON, and HOLCOMB, JJ., concur.