[No. 32518. Department One. December 28, 1953.]

LEE & EASTES, INC., *Appellant,* v. CONTINENTAL CARRIERS, LTD., *et al., Respondents.*[1]

[1]Reported in 265 P. (2d) 257.

*Kern & Dano* and *Arthur L. Griswold,* for appellant.

*Roger C. Walsh* and *Smithmoore P. Myers,* for respondents.

OLSON, J.—Plaintiff brought this action for damages to its tank truck and trailer, sustained in a collision with a truck and semitrailer owned by defendant corporation, and driven by defendant Hagan. At the conclusion of plaintiff's case, the court sustained defendants' demurrer to plaintiff's evidence, and at the close of all the evidence submitted to the jury the issues presented by defendants' cross-complaint. A verdict was returned in favor of both defendants. Judgment was entered on that verdict, and plaintiff's action was dismissed. Plaintiff has appealed.

The collision occurred about 10:15 p. m., February 3, 1952, on U. S. highway No. 10 at a point about four miles east of the town of Easton, near a bridge over Big Creek. There is a one-degree curve (one and three-quarters feet in each one hundred feet) in the highway for approximately one quarter of a mile, terminating about one hundred seventy-five feet west of the end of the bridge over Big Creek. The bridge is fifty-three feet long. The highway is very nearly level in this area, but slopes slightly downhill to the east. It is straight for about two thousand feet east of the bridge. It is forty-eight feet wide, including the shoulders, and twenty feet of it is paved.

Fresh snow had fallen during this evening, and there was snow and slush on the highway. Snow cleared from the road that night, and previously, was banked on each side of the highway to a height of about three feet, leaving a

road area of thirty-four feet between the snowbanks. Light snow or rain was falling at the time of the collision.

Plaintiff's tank truck and trailer, loaded with fuel oil, was being driven in an easterly direction on the highway described. The gross weight of the equipment was seventy-two thousand pounds. It was approximately fifty feet in length, the truck and trailer each being about twenty-five feet long. It was equipped with headlights and taillights, and several marker lights and reflectors on the sides and rear of the truck and trailer, all of which were operating.

After leaving the slight curve to its right and when it was fifteen or twenty feet from the west end of the Big Creek bridge, the truck swerved, but the driver straightened it and proceeded across the bridge. It was then traveling at the rate of thirty-eight to forty miles an hour. After crossing the bridge, the truck and trailer "jackknifed," the front of the truck swinging first to the left, and then back over the center of the road, and then to the right. The trailer collided with defendants' truck and semitrailer at a point approximately one hundred fifty feet east of the bridge. At the time of the collision, plaintiff's equipment was moving at the rate of fifteen miles an hour or less, and continued down and across the highway a short distance, after the collision.

Defendant driver testified that, as he approached the scene of the collision from the east, he observed a red light, and that:

"Well, after I did see this light I moved on down the road, and I had slacked off on my speed because I figured that it was a vehicle ahead of me, going in the same direction that I was going. And the next thing I knew was a vehicle coming down the road on the same side of the road that I was on, and when I seen it it looked about the size of the side of a barn, and I immediately took to the ditch, or I tried to take to the snowbank, rather, and I tried to get out from behind the wheel. I did try to use my brakes, I believe, but I didn't put them on too hard because I didn't want to jack-knife my rig, and I believe that I was stopped, if not virtually stopped, I was only just moving, that is all."

He testified that, before the collision, he had turned his equipment into the snowbank on his right side of the road.

The impact of the collision turned defendants' vehicle over and into the ditch, away from the highway.

 Upon these facts, the trial court did not err in sustaining defendants' demurrer to plaintiff's evidence at the close of its case. Interpreting the evidence and all inferences from it most favorably to plaintiff, and most strongly against defendants, as we are obliged to do upon such a demurrer, and regardless of plaintiff's negligence, defendants' negligence is not established, under the circumstances, in any particular alleged and relied upon by plaintiff, namely, speed, failing to stop or to exercise care and caution to avoid the collision, failing to yield right of way to plaintiff, and failing to keep control of its equipment.

Defendant driver's speed was approximately twenty-five miles an hour, when he first saw the red light ahead of him at a distance which is not exactly determinable from the evidence. He then decreased his speed. His equipment also was large and heavy, being forty-five to fifty feet long, and having a gross weight of fifty-four thousand pounds. He was confronted suddenly by plaintiff's vehicle approaching him out of the control of its driver, and admittedly over the center line of the highway. Its speed, the distance it traveled out of control, and the fact that it was in motion down the highway when the collision occurred, indicate the suddenness with which the situation confronting defendant driver was created. No reasonable person could say either that he was not faced with an emergency, or that such emergency was caused by his negligence. He acted as an ordinarily prudent person might have acted under the circumstances. See *Ruff v. Fruit Delivery Co.,* 22 Wn. (2d) 708, 721, 723, 157 P. (2d) 730 (1945), and cases cited; *Bergstrom v. Ove,* 39 Wn. (2d) 78, 82, 234 P. (2d) 548 (1951).

In one of its instructions, the court quoted the statute regarding the speed of vehicles upon the public highways of this state. RCW 46.48.010 [*cf.* Rem. Supp. 1949, § 6360-64]. It also stated that the maximum speed permitted at the time and place of collision was forty miles an hour. The instruction continued:

"Therefore, if you find from the preponderance of the evidence that the plaintiff's truck was driven and operated at a greater rate of speed than was reasonable and proper under the conditions existing at the point of operation, taking into account the weight of the truck, the width of the highway, the icy conditions of the surface of the highway, the snow that was falling, and the obstructions to his vision, then under such circumstances the plaintiff was guilty of negligence as a matter of law and, if you find that such negligence was a proximate cause of the collision and that the defendant, Continental Carriers, Ltd., was free of any contributory negligence, then your verdict should be for the defendants and against the plaintiff."

Plaintiff contends that the instruction is erroneous, in that it assumes the icy condition of the surface of the highway, and that the vision of the driver of plaintiff's truck was obstructed, both of which facts were in dispute. Plaintiff's driver testified that his truck lurched just before it reached the Big Creek bridge, as if "an ice ridge in the road" pulled the truck to the right, and that there had been ice on the road before that. This testimony was not disputed. All of the testimony is in agreement that there was slush and snow on the highway at the place of collision. Plaintiff apparently agrees that snow was falling at the time in question.

This instruction violates the rule that the court should state controverted matters of fact hypothetically, when it refers to them in its instructions to the jury. *Gilson v. Washington Water Power Co.*, 93 Wash. 480, 482, 161 Pac. 352 (1916); *Nicolle v. United Auto Trans. Co.*, 138 Wash. 48, 51, 244 Pac. 127 (1926). However, the violation of this rule is not prejudicial necessarily. *Ibid.* Where, as here, the controverted issues of fact are clearly defined elsewhere in the instructions, and the court further instructed the jury upon the issue of speed in the next instruction given, the jury could not have understood that they were charged that the particular facts specified were established conclusively. All of the instructions must be considered together. Even though the detached statements may be technically erroneous, the entire instructions fairly state the law and

the error is not prejudicial. *Myers v. West Coast Fast Freight,* 42 Wn. (2d) 524, 529, 256 P. (2d) 840 (1953).

A further assignment of error rests upon the court's instruction to the jury that, with certain exceptions which are immaterial here, a motor vehicle shall at all times be driven to the right of the center of the highway, and that,

"If you find that the truck of plaintiff, at the time of the accident, was being driven, or skidded, across the center of said highway in violation of the foregoing provision of law, then such conduct would constitute negligence, unless the plaintiff has been able to furnish evidence which explained to your satisfaction his violation of said law of the road."

This instruction was pertinent to the issue raised by plaintiff's contention that its truck was out of control and on the wrong side of the road solely for the reason that the axle on the trailer broke before the collision, due to some mechanical defect or failure which had not been known or, in the exercise of reasonable care, could not have been known to plaintiff.

In its exception to this instruction, plaintiff stated that it was erroneous because

". . . the burden of proof is admittedly assumed by the plaintiff in that he must prove by a preponderance of the evidence, if he is found to be on the wrong side of the road, the reason for being on the wrong side of the road which is embodied in the defense of latent defect . . ."

Plaintiff insisted that a preponderance of evidence upon this issue was the proper quantum of proof to be required of it. This exception presented an erroneous theory to the trial court. See *American Products Co. v. Villwock,* 7 Wn. (2d) 246, 274, 275, 109 P. (2d) 570, 132 A. L. R. 1010 (1941). Also, see *Hardman v. Younkers,* 15 Wn. (2d) 483, 492, 493, 131 P. (2d) 177, 151 A. L. R. 868 (1942), explaining that the burden of proof does not shift. Also, see *Purdie v. Brunswick,* 20 Wn. (2d) 292, 298, 146 P. (2d) 809 (1944), in which the burden of explanation upon the motorist on the wrong side of the highway is discussed. This must be taken to mean the burden of going forward with the evidence, in

view of the discussion of the presumption arising against the motorist on his wrong side of the road. Also, see *Rumford v. Snider*, 31 Wn. (2d) 431, 457, 197 P. (2d) 446 (1948). Error cannot arise from the court's failure to accept that theory.

What we said in *American Products Co. v. Villwock*, *supra*, pp. 274, 275, is applicable and controlling here:

"Although an instruction in language almost identical with that contained in the one here given was approved in *Thomas v. Adams*, 174 Wash. 118, 24 P. (2d) 432, we are of the view that such phrases as the one here involved are not to be encouraged. The degree of proof required in negligence cases is 'a preponderance of the evidence.'

"Furthermore, the burden of proving negligence by a preponderance of the evidence rests upon the party alleging it, and the party charged is not required to assume the burden of proving that he was not negligent, but is only required, in response to a *prima facie* case of negligence made against him, to come forward with evidence excusatory of his negligence. The extent to which he must go in that respect is only to the point of producing evidence sufficient to balance the scales upon that issue. Beyond that point, he is not required to go. The original burden of proving negligence by a preponderance of the evidence remains throughout the case upon the party charging negligence."

In the cited case as here the instructions amply defined the issues and the requirements of proof on those issues. The instructions, taken together, did not mislead the jury in either regard. Consequently, even though the expression attacked may not be correct, the error is not prejudicial. Further, the theory urged by plaintiff on this appeal was not presented to the trial court. Consequently, even though the instruction given may not be approved, the assignment of error directed to it cannot be sustained. See *Ralston v. Vessey*, 43 Wn. (2d) 76, 78, 260 P. (2d) 324 (1953), and case cited.

The assignment of error based upon the remarks of the court to the jury while advising them of its ruling on the demurrer to the evidence in plaintiff's case, need not be discussed in detail. We cannot consider it because, as defendants correctly contend, even if the remarks be desig-

nated a comment on the evidence, the record does not show that plaintiff's objection was ever brought to the attention of the trial court, either when the ruling was made or on plaintiff's motion for a new trial. See *State v. Davis*, 41 Wn. (2d) 535, 537, 250 P. (2d) 548 (1952).

There is sufficient evidence to sustain the verdict, and we find no error in the denial of plaintiff's motion for judgment notwithstanding the verdict or for a new trial.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.

[1]Reported in 265 P. (2d) 278.