**In re R & R CONTRACTING, INC., Bankrupt.**

**Dan PARISH, Plaintiff,**

v.

**Robert A. SOUTHWELL, Trustee, Defendant.**

**Bankruptcy No. B–78–1013.**

United States Bankruptcy Court, E. D. Washington.

June 13, 1980.

Jack R. Dean of Quackenbush, Dean, Bailey & Henderson, Spokane, Wash., for plaintiff.

Robert A. Southwell of Malott, Southwell & O'Rourke, Spokane, Wash., pro se.

## MEMORANDUM DECISION

L. WARDEN HANEL, Bankruptcy Judge.

### FACTS

On March 15, 1979 a complaint was filed by Mr. Jack R. Dean, of Quackenbush, Dean, Bailey & Henderson, on behalf of Mr. Dan Parish seeking a determination of whether certain vehicles, to-wit: one 1975 Ford pickup truck and one 1975 Prentice loader, were property of the bankrupt or its president, Mr. Frank Robinson.

Mr. Robert A. Southwell of Malott, Southwell & O'Rourke, acting as the duly appointed trustee, contends that the vehicles in question had been transferred to the bankrupt at some time previous to the filing of the petition herein and therefore title to these vehicles vested in the trustee by operation of law on November 16, 1978. Mr. Parish, on the other hand, claims that the vehicles in question were the personal property of the president of the bankrupt and therefore not property of the bankruptcy estate. To demonstrate this Mr. Parish directs the Court's attention to the certificate of ownership to the 1975 Ford pickup truck and the bill of sale, there being no certificate of ownership, to the 1975 Prentice loader. Both documents name Mr. Robinson as the owner of the vehicles. It is undisputed that no reference is made to the bankrupt on these documents.

### ISSUE

The sole issue presented to this Court for its determination is whether title to the two vehicles in question vested in the trustee on November 16, 1978 by operation of law or whether title was vested in Mr. Robinson personally.

### LAW

If ownership of the two vehicles in question was vested in the bankrupt on November 16, 1978, the day the petition praying for relief as a voluntary bankrupt under the Bankruptcy Act of 1898 was filed by R & R Contracting, Inc., it passed by operation of law to the trustee. Section 70 of the Bankruptcy Act (11 U.S.C. Sec. 110) reads in relevant part as follows:

> a. The trustee of the estate of the bankrupt . . . shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is property which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, . . . which prior to the filing of the petition he could by any means have transferred or which might have been levied upon or sold under judicial process against him, or otherwise seized, impounded, or sequestered . . .

▮ Implicit in this statement is that the trustee acquires no better title than the bankrupt had and, thus, if the bankrupt had no title or interest in the property the trustee would acquire none. *San Diego Wholesale Credit Men's Association v. Garner*, 325 F.2d 862 (9th Cir. 1963). In determining whether the bankrupt had any interest in certain property resort must be had to state law. *Caster v. Miller*, 39 F.Supp. 120 (E.D. La.1941).

In support of Mr. Parish's position that ownership of the vehicles vested in Mr. Robinson he cites the Court to R.C.W. 46.01 *et seq.* Under this statute the "owner of the motor vehicle is the person who has the lawful right of possession . . . [that] means the registered owner where the reference to owner may be construed as either to registered or legal owner." R.C.W. 46.-04.380. Registered owner, according to R.C.W. 46.04.460 means "the person whose lawful right to possession of the vehicle has most recently been recorded with the Department."

Undisputedly, Mr. Robinson was the registered owner of the 1975 Ford pickup truck.[1]

Assuming, arguendo, that this motor vehicle certificate statute is controlling on the issue of ownership to a motor vehicle it has been held to raise no more than a rebuttable presumption of ownership.

> Title to, or ownership of, a motor vehicle may be evidenced by possession of a bill of sale, certificate of title, or a certificate of registration, relating to such vehicle, although such documents do not ordinarily establish conclusively the ownership of such a vehicle, but are merely prima facie evidence thereof. 7 Am.Jur.(2d) *Automobile and Highway Traffic* § 23 (1963).

Washington has followed this view on several occasions. *Gams v. Oberholtzer*, 50 Wash.2d 174, 310 P.2d 240 (1957) (Registration of automobile establishes a rebuttable presumption of actual ownership in an action based on vicarious liability); *Coffman v. McFadden*, 68 Wash.2d 954, 416 P.2d 99 (1966) (Registration of automobile establishes a rebuttable presumption of ownership in an action based on the family car doctrine); *Delano v. La Bounty*, 62 Wash. 595, 597, 114 P. 434 (1911) (The certificate is prima facie proof of ownership and is itself sufficient to sustain a verdict.)

The policy considerations behind the enactment of R.C.W. 46.01 *et seq.* shed further light on the fact that certificates of ownership are not intended to conclusively establish title as between two competing parties both claiming ownership rights. "The laws administered by the department have the common denominator of licensing and regulation and are directed toward protecting and enhancing the well-being of the residents of the state." R.C.W. 46.01.011. In other words, the statute is intended, among other things, to protect the public against theft and to facilitate recovery of stolen automobiles and help the state in the enforcement of its regulation of motor vehicles. *See, Medico Leasing Co. v. Smith*, 6 U.C.C.Rep. 786, 457 P.2d 548 (Okla.1969). Simply stated, R.C.W. 46.01 *et seq.* is a statute in furtherance of the state's police regulatory powers. It is not intended to conclusively determine ownership of vehicles as between two parties each claiming an ownership interest in them.

The Washington statute conclusive on the issue presented to this Court is R.C.W. 62A. *et seq.* Undoubtedly motor vehicles are goods within the purview of this statute. *Nat'l. Exchange Bank of Fond du Lac v. Mann*, 81 Wis.2d 352, 260 N.W.2d 716, 23 U.C.C.Rep. 510 (1978); *Knutson v. Mueller*, 68 Wis.2d 199, 238 N.W.2d 342, 17 U.C.C.Rep. 10 (1975); *Guy Martin Buick, Inc. v. Colorado Springs National Bank*, 12 U.C.C.Rep. 612, 511 P.2d 912 (Colo.1973); *Park County Implement Co. v. Craig*, 2 U.C.C.Rep. 379, 397 P.2d 800 (Wyo. 1964).

Under the facts of this case this Court believes R.C.W. 62A.2–401 to be applicable. It reads:

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (R.C.W. 62A.2–501), and unless otherwise explicitly agreed the buyer acquired by their identification a

---

**1.** It must be noted that R.C.W. 46.01 *et seq.* would control only as to the ownership of the Ford pickup truck as it is the only vehicle to which a certificate of ownership has ever been issued. As will be set forth in more detail below, however, it is the holding of this Court that it is R.C.W. 62A. *et seq.* which is depositive on the issue of ownership and not R.C.W. 46.01 *et seq.*

special property as limited by this Title. *Any retention or reservation by the seller of the title* (property) *in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest*

. . .

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place;

. . .

(3) Unless otherwise explicitly agreed *where delivery is to be made without moving the goods,*

 (a) *if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents*; or

 (b) *if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.* . . . (Emphasis added).

A Washington case of interest is *Crawford v. Welch,* 8 Wash.App. 663, 508 P.2d 1039 (1973), *rev. denied,* 82 Wash.2d 1009 (1973). In that case a judgment creditor sought to execute on a number of antique automobiles allegedly owned by the defend-ant. Subsequent to the sheriff's execution a third party claimed ownership of the vehicles. In holding that the title to the vehicles had passed as of the date of execution to this third party the Court relied on R.C.W. 62A.2–401(3)(a) since delivery was made without moving the goods and documents of title were delivered to the third party. Since the defendant was able to show that the bills of sale and registered titles to the vehicles had been transferred to the third party the Court held this evidence overcame the prima facie case of ownership which the certificates of ownership established.

While both the instant case and the *Crawford* decision are clearly governed by Article 2 of the Uniform Commercial Code they are distinguishable in the factual circumstances surrounding the alleged transfers. In the present case there has never been a "document of title" transferring ownership from Mr. Robinson to the bankrupt while there presumptively [2] were "documents of title" transferred in the *Crawford* case. Therefore, it is R.C.W. 62A.2–401(3)(b) rather than R.C.W. 62A.2–401(3)(a) which is controlling.

 In this case the burden of proof rests upon Mr. Parish to prove, by preponderance of the evidence, that title to the

2. The Court, in *Crawford,* assumed, without deciding that a certificate of ownership was a "document of title" under the U.C.C. At 8 Wash.App. 664, 508 P.2d at 1040, the Court stated "documents of title to the vehicles, however, have not been formally transferred into Casey's name. Registration and title certificates are only prima facie evidence of ownership, which evidence is rebuttable." (Cases omitted). Jurisdictions which have decided the issue hold that such documents are not considered documents of title in the context of Article 2. *See, In re Foster,* 445 F.Supp. 949 (N.D.Okl.1978); *Nationwide Mut. Ins. Co. v. Hayes,* 276 N.C. 620, 174 S.E.2d 511, 7 U.C.C. Rep. 1105 (1970); *Medico Leasing Co. v. Smith,* 6 U.C.C.Rep. 786, 457 P.2d 548 (Okl.1969); *Semple v. State Farm Mutual Automobile Ins. Co.,* 215 F.Supp. 645 (E.D.Pa.1963). R.C.W. 62A.1–201(15) reads " 'Documents of title' includes bills of lading, dock warrant, dock receipt, warehouse receipt or order for delivery of goods, and also any other docu-ments which in the regular course of business or financing is treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by or addressed to a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identifiable mass."

Through the use of statutory rules of construction it is apparent that the Washington Courts would follow the view that neither bills of sale, registration certificates, or certificates of ownership are within the statutory definition of documents of title. If a statute specifically designates things or classes of things upon which it operates, the Latin maxim "expressio uniun est exclusio alterius" gives rise to an inference that all things or classes of things omitted from the statute were intentionally omitted by the legislature. *Knowles v. Holly,* 82 Wash.2d 694, 513 P.2d 18 (1973).

vehicles vested in Mr. Robinson personally. Under Washington law Mr. Parish had established a prima facie case of ownership of the vehicles in Mr. Robinson through the introduction into evidence of the certificates of ownership and the bill of sale in the name of Mr. Robinson. Therefore, the trustee has the burden of producing other evidence to overcome this prima facie case. In Washington the burden of proof never shifts, *Guaranty Trust Co. v. U. S.*, 44 F.Supp. 417 (E.D.Wash.1942) *aff'd on other grounds* 139 F.2d 69 (9th Cir. 1943), it is only the burden of going forward in response to a prima facie case which shifts to the trustee. *Lee & Eastes, Inc. v. Continental Carrier, Ltd.*, 44 Wash.2d 28, 265 P.2d 257 (1953). The same is true with regard to a presumption under Washington law. A presumption is not evidence and does not shift the burden of proof, but merely shifts the duty of going forward with the evidence. *California Western States Life Ins. Co. v. Vaughn*, 165 F.2d 945 (9th Cir. 1948).

Turning now to the facts in the case. Upon stipulation of the parties it was agreed that no live testimony would be presented. Instead it was agreed that the parties would file briefs and documents with the Court bearing on the issue to be decided. In that regard there are five documents for the Court to weigh and consider.

First is the schedule of assets and statement of affairs in this case. In Schedule B–2(f) the two vehicles in question are listed as assets of R & R Contracting, Inc. while in the bankruptcy case of Frank Robinson (B–79–229) these vehicles have not been listed as assets.

Secondly, there was submitted for the Court's consideration the testimony of Frank Robinson on September 22, 1978, taken at a supplemental proceeding in compliance with R.C.W. 6.32 *et seq.* at the request of Mr. Parish. Starting at page 9 of the recorded testimony the following questions and responses were given:

Q. Do you own any type of transportation? Truck, automobile?

A. Well, they are in the corporation.

Q. How many automobiles are in the corporation's name?

A. There is three pickups, one car. . .

Q. Whose name are these trucks in?

A. They are in my name.

Q. Your name personally as opposed to R & R Contractors?

A. Right. . . .

Q. Is there any other equipment that is owned by yourself or R & R Contractors, Inc.?

A. Yes, there is.

Q. What other equipment is involved?

A. There is a Printice (*sic*) Hydraulic Loader.

Q. A Printis (*sic*) Hydraulic Loader?

A. Yes.

Thirdly, there was the testimony of Frank Robinson, the president of R & R Contracting, Inc., given on December 11, 1978, the date of the first meeting of creditors. Representing Dan Parish at this meeting was Jack Dean, Mr. Parish's attorney. Beginning on page 4 in response to questions by Mr. Southwell and Mr. Dean the following testimony was elicited:

Q. In general can you give me, Mr. Robinson, what the equipment of the corporation consists of?

A. Two Caterpillar cats, a D–5 and D–6, Apprentice (*sic*) Hydraulic Loader.

Q. Will you speak up, please?

A. Apprentice (*sic*) Hydraulic Loader, two Ford pickups and there is three rubber tired skidders. . . .

Q. My question to you, Mr. Robinson, is the pickup owned by you individually or by the corporation?

A. It's in my name, but it's in the corporation.

Q. How about the loader?

A. Same way.

Q. The title is in your name, but you say it's in the corporation?

A. Yes.

Q. What about the logging truck?

A. It's in my name, it's mine personally.

Q. That's yours personally?

A. Yes.

Q. It's not owned by the corporation?

A. Right.

Next, on December 29, 1978, Mr. Dean and Mr. Southwell deposed Mr. Robinson at Mr. Dean's office on the issue of which assets were corporate assets and which were personal. Starting at page 3 of the recorded testimony the following was made part of the Court record:

Q. Now, can you briefly set forth for me what assets the corporation owns?

A. O.K., a Prentiss hydraulic loader, 2 4 × 4 pickups.

Q. Let's just stay with these and I will ask you some questions on them. Prentiss 4 × 4 loader?

A. Yes.

Q. O.K. and does the loader have a certificate of title?

A. Just a bill of sale on the loader. The truck has a title of its own.

Q. All right. Do you have a bill of sale with you with regard to the Prentiss loader?

A. No, I don't.

Q. Where is that located? . . .

A. O.K. As far as I know the bill of sale for that is with Credit Alliance.
. . .

Q. Now, what is the next piece of equipment that R & R owns? . . .

Q. O.K. There was the 2 4 × 4 pickups.
. . .

Q. Now, is that owned by the corporation?

A. Yes.

Q. Is the title in the name of the corporation?

A. No, it is not.

Q. All right. Whose name is it titled in?

A. In my name.

Q. Why is it, say, in your name rather than title in the corporation?

A. They had not been paid off at that time.

Q. Who is they?

A. The bank that held the title to it.

Q. What bank was that?

A. O.N.B.

Q. When did you transfer this to the corporation?

A. At the same time we formed the corporation in January of 1977.

Q. Where is the title now?

A. I have the title.

Q. And is it still in your name or the corporation's name?

A. It is still in my name.

Q. Do you have it with you today?

A. No, I don't. . . .

Q. As far as vehicles, what do you own that you claim you own personally?

A. Well, there is a 1968 T-bird Ford.

Q. O.K.

A. O.K., there is 1969 Ford Torino that is in my name because my son is not old enough to have it in his name by the State of Washington.

Q. What else?

A. There is a 1975 Ford pickup 2 wheel drive.

Q. That is the one you are presently driving?

A. Right. There is a 1973 Kenworth truck with trailer. . . .

Finally, this Court has reviewed the bankrupt's corporate minutes and by-laws and discovered the minutes of a special meeting of the board of directors of the bankrupt. On January 3, 1977 a meeting was held for the purpose of discussing the manner of transferring machinery and equipment owned by the stockholders to the corporation. After apparent discussion it was resolved that:

Title to all machinery and equipment will remain in the name of the stockholders. That the corporation would assume and make all payments on all items still under contract. That the corporation would pay for all general maintenance and upkeep on this machinery and equipment and pay insurance on same at the expense of the corporation and that title to any and all of said machinery and equipment would remain in the name of the stockholders until such time as the corporation

is financially able to pay the full amount owing to the stockholders.

 From the above evidence it must be the conclusion of this Court that the plaintiff has not sustained his burden of proof on the issue of ownership of the vehicle in question. While Mr. Parish established a prima facie case of ownership in Mr. Robinson since the bill of sale and certificate of ownership listed Mr. Robinson as owner the trustee has gone forward with sufficient evidence to overcome this prima facie case. The uncontroverted evidence shows that sometime in January of 1977 Mr. Robinson transferred ownership of the vehicles in question to the corporation. While the exact moment of the transfer was not established it need not be to satisfy R.C.W. 62A.2–401(3)(b). R.C.W. 62A.2–204 reads:

(1) *A contract* for sale of goods may be *made in any manner sufficient to show agreement, including conduct* by both parties which recognize the existence of such a contract.

(2) *An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.*

(3) Even though one or more terms are left open the contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonable certain basis for giving an appropriate remedy. (Emphasis added).

Furthermore, the fact that Mr. Robinson, as a stockholder, retained legal title to the vehicles until they were paid for is not conclusive evidence that he retained ownership of them. The reservation of title by the seller does not prohibit title vesting in the buyer but only reserves a security interest in the seller. R.C.W. 62A.2–401.

The Court is well aware of the problems the plaintiff faced in proving, by the preponderance of evidence, that ownership of the vehicles vested in the bankrupt. The Court is of the opinion that in this case the testimony of Mr. Robinson is particularly trustworthy. In addition to the bankruptcy case of R & R Contracting, Inc. Mr. Robinson has personally filed a petition in bankruptcy in which Mr. Parish is a named creditor. In that case Mr. Parish has filed a complaint seeking to have the debt owed him declared non-dischargeable under section 17(a)(2) of the Bankruptcy Act (11 U.S.C. § 35). While that adversary proceeding has not yet been decided the Court can note that Mr. Robinson's position in that adversary proceeding would have been much improved had he testified that the vehicles in question were personal assets. Both vehicles were seized by the sheriff pursuant to a writ of execution issued on a judgment held by Mr. Parish. Had these vehicles been the personal property of Mr. Robinson they would have almost completely satisfied that judgment should it eventually be entered. Certainly a better result for Mr. Robinson than the present one. In spite of this, however, he testified, in the opinion of this Court, truthfully and without any attempt to frame his testimony in a light most favorable to himself although he could have been motivated to do so.

On the basis of the foregoing Memorandum of Opinion which is hereby adopted as my Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752 it is

ORDERED that the trustee submit an Order in conformity with the foregoing.